UNITED STATES, Appellee,

v

PHILLIP K. SCHAIBLE, Airman Third Class,
U. S. Air Force, Appellant

11 USCMA 107, 28 CMR 331

No. 13,145

Decided January 8, 1960

*Captain Norman K. Hogue* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James L. Kilgore.*

*Lieutenant Colonel Francis R. Coogan* argued the cause for Appellee, United States. With him on the brief were *Colonel John F. Hannigan* and *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Despite his plea to the contrary, the accused was found guilty of six larcenies and one desertion, in violation of Articles 121 and 85 of the Uniform Code of Military Justice, 10 USC §§ 921 and 885, respectively. He was sentenced to dishonorable discharge, confinement at hard labor for four years, total forfeitures, and reduction to basic airman. The reviewing authorities affirmed the findings and sentence except that a board of review in the office of The Judge Advocate General of the Air Force reduced the period of confinement at hard labor to three years. We granted accused's petition for review to determine whether the law officer erred in his instruction on the ingredient of false pretense and in admitting in evi-

dence a prosecution exhibit which referred to alleged civil offenses committed by the accused. The two asserted errors will be discussed in the order stated above.

In his instructions to the court-martial, the law officer gave the following advice on the element of wrongful taking:

"The court is further advised that with respect to the element that the accused wrongfully obtained the property, obtaining property by false pretense is wrongful. A false pretense is a false representation of a past or existing fact. The pretense must be in fact false when made, and the accused must have known it was false to the extent that he did not have an honest belief that it was true."

Recently, in United States v Dinsmore, 11 USCMA 28, 28 CMR 252, we deemed it unnecessary to consider the legal accuracy of the same instruction, for it related only to the larcenies and, under the posture of the evidence and the pleas in that case, whether it was correct or incorrect was of no moment, for no prejudice resulted to the accused. We reach the same conclusion in the case at bar. Here the Government proved by independent evidence all the essential elements of the larceny offenses. In addition, prior to trial accused had executed a sworn statement in which he fully confessed to having committed each and every one of the alleged larcenies. It was established that the statement was entirely voluntary and that it was read, understood, and signed by the accused. The confession was admitted into evidence without objection by the defense, and in it accused admitted he never had an account at the bank upon which the checks were drawn; that he knew at the time the checks were cashed that they were worthless; and that he obtained money from the payee in each instance.

As early as United States v Monge, 1 USCMA 95, 2 CMR 1, we noted that "A deliberate, voluntary confession of guilt is among the most effective proofs in the law," and here the defense did not even object to its introduction. Further the defense rested without presenting any evidence on the merits. By his admissions, the accused affirmatively furnished evidence that he knew his representations were false and, without any evidence to the contrary, we conclude the court-martial could not have been misled by the advice that the accused must know his pretense to be false to the extent that he did not have an honest belief it was true. Certainly, honesty of belief was not placed in issue by the testimony of any witness, and there was no evidence which would cause the court to delve into the accused's mental processes. He had admitted obtaining the money by a knowing misrepresentation and, without some evidence to the contrary, a reasonable court member could not possibly find that he thought he had or would have money to pay the checks upon presentment. As we pointed out in United States v Rhoden, 1 USCMA 193, 2 CMR 99, it is sufficient to show prejudice if, in arriving at findings, there was a reasonable possibility the court members were misled by erroneous instructions. See also Article 59(a), Uniform Code of Military Justice, 10 USC § 859; Kotteakos v United States, 328 US 750, 90 L ed 1557, 66 S Ct 1239; Little v United States, 73 F 2d 861 (CA 10th Cir) (1934); United States v Clark, 1 USCMA 201, 2 CMR 107. Here, however, even if we assume arguendo that the instruction was improper, that possibility does not exist. Cf. United States v Jenkins, 1 USCMA 329, 3 CMR 63; United States v Moynihan, 1 USCMA 333, 3 CMR 67; United States v Boone, 1 USCMA 381, 3 CMR 115. The first assignment is, therefore, decided against the accused.

The second issue concerns the admission of corrected morning report extracts carrying certain entries showing misconduct of the accused while absent without leave. The relevant entries read as follows:

"AWOL since 2 Sep 59 [sic] fr 3320th Retraining Group Amarillo AFB Tex asgd & jd PNFD conf base detention cell appr 1830 hrs 31 Dec 58 by civil auth Los Angeles Calif *on burglary charge* rtnd to mil con 0400

**109**

hrs 9 Jan 59 at USN Shore Patrol Hq Los Angeles Calif Par 3 SO 18 amend by par 6 SO A–40 Hq 2347th ABGru

. . . . .

"AWOL since 2 Sep 58 fr 3320th Retraining Group Amarillo AFB Tex asgd & jd PNFD conf base detention cell appr 1830 hrs 31 Dec 58 by civil auth Los Angeles Calif *on burglary charge 3 Jan 59 sentence reduced to petty theft amn sentenced to 59 days in jail 8 Jan 59 sentence modified* amn rtnd to mil con 0400 hrs 9 Jan 59 at USN Shore Patrol Hq Los Angeles Calif with no civil charges pending amn stated he was in AWOL status at time of appr par 3 SO 18 amend by par 6 SO A–40 Hq 2347th ABGru." [Emphasis supplied.]

At the time the exhibit was offered, defense counsel objected specifically to the italicized information which mentioned the offense of burglary and the conviction of petty theft with the resultant sentence. An out-of-court hearing was held at the time of the objection, and defense counsel there argued that accused's unauthorized absence terminated upon his apprehension by civilian authorities, and further requested that the remarks to which he objected be masked so they would not be disclosed to the court-martial. Trial counsel resisted the request on the basis that the information was required by Air Force regulations, that the exhibit was an official document, and that its contents were, therefore, competent and relevant to show that accused's unauthorized absence did not terminate until he was turned over to military authorities. See Manual for Courts-Martial, United States, 1951, paragraph 165; United States v Myhre, 9 USCMA 32, 25 CMR 294. He argued that the entire exhibit should be admitted but the court-martial should be advised to disregard the portion relating to burglary in their deliberations. The law officer generally adopted that course, admitted the exhibit, and at that time informed the court not to consider the burglary charge or petty theft information shown thereon since those entries were strictly administrative in nature and

110

had no bearing on the issue. However, when he gave his final instructions, he modified the above-stated advice and informed the court it was to pay no heed to the administrative entry concerning the burglary charge.

We are somewhat at a loss to understand the reasoning of the law officer, for it seems to be quite in █ consistent to us. Defense counsel argued his contention that accused's status as an unauthorized absentee terminated before he was actually picked up by military authorities only to the law officer as an interlocutory question—no mention thereof was made before the members of the court-martial. Thus, there was no reason for the court members to have the information on that issue. Further, if, as the law officer instructed, the matters in question were not to be considered by the court, then there was no reason why they should not have been masked. They were divisible from the remaining entries; the sense of the latter would not have been impaired by the deletion; and since the record of the out-of-court hearing discloses the matter defense counsel wanted masked, it would provide the information necessary for review of the law officer's ruling on the interlocutory question raised by the defense in the out-of-court hearing. It is a bit unusual to admit evidence irrelevant to the issues before the triers of fact, and which is separate from relevant testimony, and then inform the court to disregard it. Certainly it is the much preferred practice not to let the court see it in the first instance, and particularly is that true where the information is of such a character that the potentiality of unnecessary harm to an accused is present.

Government counsel seek to support the ruling by advancing the argument that the official document █ as a whole was admissible █ because Air Force regulations require the recording of all the information shown in the entries. True it is that we have held an official record is admissible in evidence when it is made in accordance with regulations by an officer charged with

the duty of preparing the same. United States v Parlier, 1 USCMA 433, 4 CMR 25. However, we have also held that merely because a document is official does not render everything recorded therein admissible. United States v Hall, 10 USCMA 136, 27 CMR 210. Materiality, competency, and relevancy are essential before testimony should be placed before members of the court. In this particular instance we are confronted with an official record which contained information showing prior acts of misconduct. At best, they were unnecessary and largely irrelevant to any issues before the triers of fact and they were of a type which tended to besmirch the character of the accused and brand him as a person with a penchant for committing crimes. When that situation arises, a law officer should give consideration to the policy considerations which raise a bar to the use of the testimony even though it might be otherwise admissible. Had this law officer stopped to consider the damage to the accused as compared to the need of the Government to use the testimony, he would have necessarily reached a conclusion that it should not have been admitted into evidence before the court members. Most assuredly the Government did not need the evidence if it could not be considered, and as for damage to the accused, it is noted that the real issue to be resolved by the triers of fact was the intent with which the accused either went or remained absent. The Government's case on that element of the principal offense of desertion was circumstantial and the court's finding had to be based upon a 129-day absence, accused's apprehension by civil authorities some 1,300 miles from his duty station, failure to report into any of the several military installations located in the area where he was apprehended, and the commission of six larcenies immediately prior to his unauthorized departure. Obviously those facts strongly support an inference of intent not to return, but they do not compel a holding to that effect. In this connection, it seems to us that committing serious offenses while in an absentee status might cast some light on intent to abandon the service, and there is a fair probability that the Government's case was strengthened by the testimony that accused was apprehended by civilians for burglary and convicted of theft.

We have not overlooked the Government's contention that the court-martial members were directed to disregard the evidence and they are presumed to have followed that advice. United States v On Lee, 193 F 2d 306 (CA 2d Cir) (1951); United States v O'Briski, 2 USCMA 361, 8 CMR 161; United States v Patrick, 8 USCMA 212, 24 CMR 22. While the questioned evidence was not so inflammatory that its prejudice might not be cured by an appropriate instruction, as we interpret the admonition given by the law officer, the court-martial could, without disregarding his caveat, consider the entries as evidence. Originally the charge to disregard was aimed at both entries, but this was corrected in the final instruction to apply only to the burglary charge. This left for consideration the reduced larceny conviction, and it would be most unusual for the court-martial to know the offense was reduced without paying some attention to the greater crime to which the reduction applied. We, therefore, conclude that while the inadmissible testimony had no impact on the larceny offenses, it prejudiced the accused on the desertion charge.

In view of our holding, the findings on the larceny specifications are affirmed, but accused's conviction for desertion must be set aside. Accordingly, the decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for reference to a board of review, which may either affirm a finding of the lesser included crime of absence without leave and affirm an appropriate sentence for all affirmed offenses, or grant a rehearing on the desertion charge and the sentence.

Quinn, Chief Judge (concurring):

I agree with the principal opinion in regard to the morning report entries, but I have reservations as to the discussion on the challenged instruction.

**111**

United States v Dinsmore, 11 USCMA 28, 28 CMR 252, is inapplicable. It held that the error, █ if any, in the instruction was not prejudicial because by his plea of guilty to the lesser offense the accused judicially admitted the wrongfulness of the taking. There is no such admission here. True, the evidence compellingly establishes the fact of wrongfulness but as I observed in my dissent in United States v McElroy, 3 USCMA 606, 614, 14 CMR 24: "As a general rule, the omission of an element [from an instruction] cannot be supplied by evidence of guilt, however compelling it may be." Nevertheless, I concur in the result because, under the instructions given, the court-martial could not find the accused guilty unless it found beyond a reasonable doubt that at the time of cashing the checks he entertained an intent permanently to deprive the owners of their money. Even if we assume the court-martial could, under the challenged instruction, find that the accused honestly believed he had an account, and funds in the drawee bank, it could still find, from the evidence, that he intended to deprive the payees of their money by means of the checks. Therefore, the disputed instruction presents no fair risk of prejudice to the accused. I join in the action directed in the principal opinion.

FERGUSON, Judge (concurring in the result):

I concur in the result.

Following accused's conviction of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and desertion, in violation of Code, supra, Article 85, 10 USC § 885, intermediate appellate authorities affirmed the findings but reduced the amount of confinement at hard labor involved in the sentence adjudged. We granted review on the issues whether the law officer's instructions on the offense of larceny were prejudicially improper and whether it was equally erroneous to admit in evidence a morning report which referred to accused's detention by civil authorities for burglary

and subsequent conviction of petty theft.

I have heretofore set forth my views on the vice inherent in the law officer's instructions expanding on █ the element of wrongfully obtaining money by means of a false pretense. See my concurring opinion in United States v Dinsmore, 11 USCMA 28, 28 CMR 252. From its inception, however, this Court has held that instructional errors of the type here involved are not prejudicial if the record compellingly establishes accused's guilt. United States v Jenkins, 1 USCMA 329, 3 CMR 63; United States v Moynihan, 1 USCMA 333, 3 CMR 67; United States v Boone, 1 USCMA 381, 3 CMR 115; United States v Rhoden, 1 USCMA 193, 2 CMR 99. The evidence presented here attains that high standard.

At the outset, the prosecution established that the checks in question had been presented to the drawees in return for cash. It was stipulated that accused had no account in the bank upon which the checks were drawn and that they were returned unpaid. It was also stipulated that accused's confession was voluntary. That document relates in detail that the accused, for the purpose of obtaining funds with which to drink, drew and uttered the instruments in question, knowing he had no account in the bank and that the checks would not be paid.

As the doctrine enunciated above represents the settled law of this Court, I join with Judge Latimer in his conclusion that the instruction did not prejudice the accused. See my concurring opinion in United States v Thompson, 11 USCMA 5, 28 CMR 229.

Similar considerations impel in me the belief that the error involved in receiving evidence that the █ accused had been apprehended for burglary and convicted of petty theft could not have affected the accused's conviction for larceny by check. This Court has repeatedly held that compelling evidence of guilt is sufficient to overcome any danger that the members of a court-martial may infer from the receipt of

such inadmissible items that the accused was a "bad man" and, for that reason, should be convicted. United States v Johnson, 3 USCMA 447, 13 CMR 3; United States v Nicholson, 8 USCMA 499, 25 CMR 3. Thus, as the opinion points out, the effect of this latter error is limited to the findings of guilty of desertion and the sentence. With respect to the verdict concerning that offense, its consideration by the court-martial may be overcome by a rehearing or reduction of the desertion findings to absence without leave. The impact of receiving evidence of the misconduct upon the penalty adjudged by the court-martial may be purged by reassessment of the sentence. As this is the action which the opinion directs, I join in the order disposition.