UNITED STATES, Appellee

v

SAMUEL A. WOODLEY, Private,
U. S. Army, Appellant

12 USCMA 123, 30 CMR 123

No. 14,356

Decided January 19, 1961

*First Lieutenant Talbot J. Nicholas* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel W. H. Blackmarr* and *First Lieutenant Robert B. Gillan.*

*First Lieutenant Barry L. Kroll* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel James G. McConaughy.*

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty of failure to obey a lawful order and forgery, in violation of Articles 92 and 123, Uniform Code of Military Justice, 10 USC §§ 892 and 923, respectively.

The court-martial adjudged a sentence which included reduction to the lowest enlisted grade, dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for two years. Both the convening authority

and the board of review affirmed the conviction, but the board reduced the confinement portion of the sentence to incarceration at hard labor for one year and three months. We granted accused's petition for review to determine the single issue of whether the law officer erred in admitting a prosecution exhibit which contained unfavorable statements concerning the military record of the accused.

The exhibit in question, which was offered in evidence by the prosecution, is captioned "Installation ■ Clearance Record." It is an official document which established that the accused had satisfactorily settled all personal and property accounts with the Government, a necessary requirement of clearance before he could be returned from overseas duty to the United States. The document contained two entries which reflected that his conduct and efficiency were rated as being unsatisfactory, and these could have been masked out without impairing the relevant portions of the exhibit. In making his objection to the proffered evidence, defense counsel specifically noted that he was objecting only to those remarks. At that time the accused had not placed the quality of his service in issue and we believe the law officer erred in not sustaining the objection until the two entries had been obliterated. It would have been a simple matter to have done so, and we find no reason for the law officer not keeping from the court-martial members evidence which is incompetent even though it is included in a document which is admissible. See United States v Schaible, 11 USCMA 107, 28 CMR 331; United States v Larue, 11 USCMA 470, 29 CMR 286.

While we find error—indeed the Government forthrightly concedes the law officer should not have ■ allowed the entire document to go to the court-martial without masking the two remarks with which we are here concerned—nevertheless we are certain the impropriety had no impact on the findings or sentence.

124

The facts of the substantive offenses are largely uncontested, and they are ample to sustain the findings of guilt beyond a reasonable doubt. In fact, the evidence of the prosecution, when coupled with the voluntary pretrial confession of the accused, compels a finding that the accused was guilty of the alleged crimes. The incompetent entries were not inflammatory, and moreover there was competent evidence in the record that the accused was being returned to the United States to afford him a chance to "straighten up." That alone would bespeak unsatisfactory service. In addition, his unit commander and a sergeant who was also a member of accused's organization testified that his reputation for truth and veracity was poor and they would not believe him under oath. Parenthetically, we note this evidence was admissible because accused became a witness in his own behalf for the purpose of testifying on the voluntariness of his confession. However, his testimony fell far short of raising any question of involuntariness and, as we have previously mentioned, there was no issue of fact to be resolved on the substantive offenses. We, therefore, have no hesitancy in saying that the two entries had no impact on findings.

We reach the same conclusion on sentence. In addition to the evidence which came in prior to ■ findings, the accused took the witness stand in extenuation and mitigation, and it is arguable that his testimony concerning his prior service rendered the entries admissible on the sentence. But pretermitting that question, we point out he testified to his difficulties which would indicate clearly that his conduct and efficiency was below that of a satisfactory soldier. Furthermore, his company commander had testified he had a talk with the accused about his return to the United States, which was prompted by the accused's unsatisfactory overseas performance of duties. The questioned entries were, therefore, only repetitious of other competent testimony. But, in addition, the accused was found guilty

of forging another enlisted man's savings bond, which carries a maximum sentence of a dishonorable discharge, reduction to the lowest enlisted pay grade, total forfeitures, and confinement for five years. While the parties are in disagreement on the punishment imposable for the other offense, it matters little whether we consider it will support a maximum sentence of six months for failure to obey a lawful order, the same period for missing movement, or a one-month period for absence without leave. See Footnote 5 to the Table of Maximum Punishments, paragraph 127c, Manual for Courts-Martial, United States, 1951. For the purposes of this case, we will assume the lesser period is appropriate. But even then, when the two offenses are considered together, we point out that the court-martial sentenced accused to only two years' confinement, and the term of imprisonment as it now stands is less than one-fourth of the maximum that could have been imposed. The facts surrounding the forgery offense show a total disregard for the rights of another enlisted person and a forgery of two names, and the absentee crime was aggravated. Both would show character defects and unsatisfactory service. Accordingly, we conclude that the two entries in the exhibit, if noticed at all by the court-martial members, did not influence them in their assessment of appropriate punishment.

For the reasons hereinabove set forth, we affirm the decision of the board of review.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):
I dissent.

When, as in this case, the Government deliberately and erroneously inserts in the trial evidence of the accused's bad character and poor military efficiency, I am of the view that reversal normally must follow. The effect of such proof in a court-martial is inevitably to cause the members to weigh the desirability of retaining the defendant as a member of the armed forces and to remove any doubt about his guilt. In short, the Government obtains its conviction and sentence, not on the merits of the case, but because accused is a bad man.

Indeed, the Government concedes it was error for the law officer to receive that portion of a prosecution exhibit which reflected accused's character and efficiency ratings as unsatisfactory. Moreover, my brothers conclude that the concession is proper. However, they find that the error had no impact on the findings and sentence, and it is with this holding that I must disagree. A resume of the evidence in the record will demonstrate wherein I consider their rationale to err.

The accused was charged with disobedience of a lawful order to report to Army authorities at Bremerhaven, Germany, for return to the continental United States, in violation of Uniform Code of Military Justice, Article 92, 10 USC § 892, and with forging the signature of the owner of a United States Savings Bond to the Request for Payment which that obligation contained, in violation of Code, supra, Article 123, 10 USC § 923.

At the trial, evidence was adduced tending to establish that the accused delivered a United States Savings Bond, issued to Sergeant Junior Cain, to one Kopp, a German national, as payment for rental of an automobile. The bond's payment certificate was purportedly endorsed by Cain. Cain denied signing the certificate. A criminal investigator testified that the accused, after being properly warned and initially electing to remain silent, asked to speak with him in private. The investigator informed the accused that anything he said could not be held in confidence but would be used as evidence against him in the event of a trial by court-martial. Thereupon, the accused orally admitted he had made Cain's signature to the bond's request for payment.

The accused denied making the alleged statement to the investigator and declared he had only indicated his desire to remain silent. His testimony to some extent is supported by

**125**

that of a military police investigator who stated he witnessed the reading of Code, supra, Article 31, 10 USC § 831, to the accused and heard him elect silence. There is, however, other proof which tends to explain away this seemingly corroborative evidence.

It may be conceded that the evidence of accused's failure to obey an order to report to Bremerhaven, Germany, for return to the United States compellingly establishes his guilt of failure to obey a lawful order. However, the recital of the record set forth alone equally establishes the existence of a substantial factual question concerning whether accused forged Cain's name to the savings bond and, in light of his denial of any admission to the investigator, it is difficult for me to perceive any real basis for the argument that the testimony left the court-martial no reasonable alternative to a verdict of guilty. Rather, I would characterize the prosecution's case, consisting of nothing more than proof of possession of a falsely made bond and an oral admission, as something less than substantial, albeit legally sufficient. This was the state of the record in which the accused's bad character was weighed by the members of the court-martial, and this is the major reason why I believe my brothers err when they conclude that the inadmissible item had no impact.

Aside, however, from their finding that the evidence of accused's forgery is compelling, the argument is made that the record elsewhere bespeaks his "unsatisfactory" service as it reflects that he was being returned to the United States "to afford him a chance to 'straighten up.'" At the outset, I note that I have considerable doubt that reasonable court members would infer from that statement alone that neither accused's character nor his efficiency were satisfactory. Indeed, I believe the evidence with regard to this matter should be construed in context and, when so considered, it is apparent that it falls far short of injecting the issue of moral fitness into the trial. Thus, the record reflects that the information was adduced in the following manner:

"EXAMINATION BY THE COURT

"Questions by Major Cameron:

"Q Captain, do you normally talk to all men who are being rotated as to catching a train and what time he is supposed to arrive at Bremerhaven?

"A Normally, yes, sir.

"Q Did you talk with the accused in this case with another group of men or did you talk to him by himself?

"A I talked to Private Woodley by himself.

"Q Why did you sort out this man to talk to about—

"A Because I wanted to have a more intimate conversation with Private Woodley prior to his leaving. Private Woodley had a little trouble and high hopes of maybe straightening himself out if he would, as I stated before, it would behoove him. I told him if he caught the train, got back to the States, see if he could straighten himself out—"

Finally, I point out that this testimony was elicited by a member of the court-martial and appears on the same page of the record which also depicts the erroneous receipt of the evidence of accused's character and efficiency ratings. As the defense counsel's objection to that matter had just been overruled, it is obvious that it would have been fruitless to interpose further argument concerning possible inferences of bad character to be drawn from the answers to the member's queries even if one assumes that the witness' replies contained such implications. In short, it is simply difficult for me to see how erroneously permitting receipt of express evidence of accused's bad character is cured by the revelations contained in the quoted examination.

The last prop upon which the principal opinion relies is that the prosecution elsewhere properly introduced evidence of accused's poor reputation for veracity. In view of his testimony, there can be no doubt that this course of action was proper as his credibility

126

was a central issue in the case. Manual for Courts-Martial, United States, 1951, paragraph 153b(2)(a). To hold, however, that the receipt of this limited evidence of accused's reputation excuses the court-martial's scrutiny of proof of his general bad character simply renders meaningless the principle that the prosecution's evidence "will be limited by the scope of the character evidence introduced by the accused." Manual, supra, page 244; and see the dissenting opinion of Chief Judge Quinn, United States v Brumfield, 4 USCMA 404, 15 CMR 404.

I am convinced from this record that accused's character and efficiency were improperly drawn into the case by the prosecution as a makeweight for an otherwise weak case. True, if one disregards the factual question concerning whether accused made his alleged admission, believes that the record, as quoted, supra, otherwise reflects the deficiencies in his prior service, and ignores the limitation on the scope of the prosecution's right to attack accused's veracity, it may be possible to reach the result at which my brothers eventually arrive. However, for the reasons set out herein, I cannot overlook these matters and accept the construction of the transcript upon which their reasoning is based. Accordingly, I am unable to join with them in affirming this conviction. The fairness of an accused's trial is too important to be circumvented by such a strained approach as is adopted here.

I would reverse the decision of the board of review and authorize a rehearing on the forgery charge and the sentence or reassessment of the penalty on the specification of disobedience.