UNITED STATES, Appellant

v

ROBERT L. BALDWIN, Private First Class,
U. S. Marine Corps, Appellee

17 USCMA 72, 37 CMR 336

No. 19,957

June 2, 1967

*Major Ernest B. Wright,* USMC, argued the cause for Appellant, United States.

*Captain John P. Gleeson,* USN, argued the cause for Appellee, Accused. With him on the brief were *Lieutenant Colonel Frederick H. Campbell,* USMC, *Lieutenant Colonel Paul F. Henderson, Jr.,* USMC, and *Lieutenant Clinton F. Raymond,* USNR.

## Opinion of the Court

KILDAY, Judge:

Accused was arraigned before a general court-martial convened at Da Nang, Republic of South Vietnam, charged with one specification of unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918. He was found guilty as charged and sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for ten years. The convening authority approved only a finding of guilty of voluntary manslaughter, in violation of Article 119, Uniform Code of Military Justice, 10 USC § 919, reduced the con-

**73**

finement portion of the sentence to six years but otherwise approved the adjudged sentence. The board of review set aside the findings of guilty and the sentence and permitted a rehearing to be ordered.

The Judge Advocate General of the Navy has certified the decision of the board of review with respect to the following issue:

> "Was the board of review correct in holding that the failure of the law officer to instruct, *sua sponte,* on the limited use to be made of rebuttal character evidence so prejudiced the accused as to require setting aside the findings of guilty and the sentence?"

For the purpose of considering the first assignment of error alleged before it (that accused was prejudiced as to the findings by character rebuttal in the form of specific acts of misconduct), the board of review capsulized the testimony in the case in chief as follows:

> ". . . During the evening of 1 January 1966, the deceased, STEFFEK, was in a tent with other persons present. The accused, BALDWIN, entered, remained for a short period of time, and departed. A few minutes after the accused departed, the deceased also left the tent apparently for the purpose of making a head call. The sound of an argument was heard outside the tent, followed by a shot. STEFFEK was heard to say, 'I didn't mean no harm, Baldy.' Another witness heard the following remarks, 'You did it to me. I didn't think you would do it to me.' These statements were followed by a moan or groan. Witnesses arriving at the scene found the deceased lying on the ground, with a pistol similar to one previously observed in the possession of the accused under his body. The deceased had been shot through the heart. The accused was heard to say; 'He tried to kill me.' The accused had a bloody nose, a laceration of the lip, and a slight swelling of the ear. No cries for help had been heard. The deceased was described

as a big man of quiet and peaceable nature.

> "One character witness on behalf of the accused, who had known the accused more than one year, asked on direct examination what he could tell about the peaceablness [sic] of the accused, replied: 'I have never heard of him being in any fights or arguments whatsoever.' In rebuttal, a prosecution witness was permitted to testify, without objection by the accused, that on several occasions he accompanied the accused on liberty in the Philippines, and in some instances, they would instigate arguments and fights. Another prosecution witness in rebuttal testified that he had known the accused about one year, and that while in the Philippines, on some occasions, he and the accused instigated fights. The rebuttal character evidence in question provides the basis for the first assignment of error."

Beginning with the premise that evidence of specific acts is not permissible to show either good or bad character (United States v Nicholson, 8 USCMA 499, 25 CMR 3; United States v Haimson, 5 USCMA 208, 17 CMR 208), the board of review noted that a specific trait of character such as peaceableness, in a prosecution for any offense involving violence, may properly be shown. After the accused introduces evidence as to his good character, the board reasoned, the prosecution may, in rebuttal, introduce evidence as to his bad character; however, the character evidence in rebuttal which may properly be received will be limited by the scope of the character evidence introduced by the accused. (Manual for Courts-Martial, United States, 1951, paragraph 138*f*(2).)

Applying these principles to the case at bar, the board found it proper for defense counsel to show that the accused was a peaceable person and for the prosecution to rebut with evidence of the same scope. But, the board's opinion states:

> ". . . While we think this opened the door to rebuttal evidence of the same scope (Wigmore on Evidence,

3d Ed., Sec. 1873, United States v Sellers, 12 USCMA 262, 30 CMR 262 (headnote 5), United States v Bennett, ACM 4824, 3 CMR 785, Michelson v United States, 335 US 469), the prosecution in this instance exceeded the scope of proper rebuttal by showing that the accused had instigated fights without provocation, thereby using specific acts of misconduct to rebut negative evidence to the effect that the accused was not known to have been engaged in any fights."

Declining to decide whether the law officer's failure, at that juncture, to stop the prosecution and to have forbidden the admission of evidence in rebuttal which exceeded the scope of the testimony offered by the defense was prejudicial error, the board of review held that:

". . . having allowed such rebuttal testimony in the form of specific acts of misconduct, it then became incumbent upon the law officer to instruct the court sua sponte that evidence of prior acts of misconduct on the part of the accused could be used for no purpose but to rebut evidence adduced by the defense that the accused was a peaceable individual who had not engaged in any fights; more specifically, that it could not be used for the purpose of showing that the accused was a violent individual disposed to instigating fights—from which it could logically be inferred that he instigated the difficulty in the instant matter and that he was the aggressor. MCM, 1951, par. 138g. See also Wigmore on Evidence, 3d Ed., Secs. 29a, 55, 192–195."

One board member in a separate opinion stated:

"I concur generally.

"If we err in our opinion in this case it is in the implication that the prejudicial effect of showing specific acts of misconduct to rebut the accused's evidence of good character for peaceableness might have been eliminated by an appropriate instruction from the law officer. This is a case in which the accused is charged with murder as a result of a homicide to which he was the only surviving eye-witness and in which the evidence reasonably raised the issue of self-defense. Under these circumstances, it may well be that the presentation of inadmissible evidence that on other occasions the accused had instigated fights was so inflammatory as to preclude correction by means of instructions. Cf. United States v Schaible, 11 USCMA 107, 111, 28 CMR 331, 335. A determination of that question, however, is not necessary to the determination of this case.

"In defending against the charge, the accused put in issue his character for peaceableness. In rebuttal, the prosecution could properly have called witnesses to testify as to the accused's reputation for the character trait in question or as to the witness' personal opinion with respect to the character trait in question. Par. 138f(1), MCM, 1951. But evidence of specific acts of misconduct are not admissible for this purpose. United States v Haimson, 5 USCMA 208, 17 CMR 208."

In determining the need for a *sua sponte* limiting instruction, the board of review depended on our decisions in United States v Bryant, 12 USCMA 111, 30 CMR 111, and United States v Hoy, 12 USCMA 554, 31 CMR 140; and for ascertaining the existence of prejudice, it followed the principles laid down by us in United States v Back, 13 USCMA 568, 33 CMR 100.

The Government, in urging reversal of the board of review's opinion, contends that the relative insignificance of the specific acts of misconduct indicate the law officer did not err in omitting limiting instructions, and, if (*arguendo*) he erred, compelling evidence of the accused's guilt of voluntary manslaughter overcomes any possibility of prejudice.

At the outset, we note the Government apparently concedes that the rebuttal evidence offered to establish the bad character of the accused related to specific acts of misconduct for it does

**75**

not contend otherwise but merely labels them as relatively insignificant. We agree that the testimony disclosed specific acts of misconduct. This being the case, we need only repeat a portion of what we said, on this issue, in United States v Haimson, supra, at page 223:

"With respect to the use of such acts to show an accused's bad character, Dean Wigmore has declared:

'The law here declares a general and absolute rule of exclusion. It is *forbidden,* in showing that the defendant has not the good character which he affirms, *to resort to particular acts of misconduct by him.'* [Emphasis partially supplied. Wigmore, Evidence, 3d ed, § 193.]

See also, Eley v United States, 117 F2d 526 (CA 6th Cir); Zirkle v Commonwealth, 189 Va 862, 55 SE 2d 24; Carroll v State, 77 Ga App 251, 48 SE2d 491; 20 Am Jur, Evidence, § 326, page 305; Wharton, Criminal Evidence, § 337."

Whether the specific acts of misconduct are relatively insignificant or not is immaterial. Such evidence is generally inadmissible. However, when admitted under certain recognized exceptions to the rule (Manual for Courts-Martial, United States, 1951, paragraph 138*g*), "The acceptance of such evidence makes equally certain the law officer's duty to furnish limiting instructions as to its use; that advice being 'a necessary concomitant of such evidence.'" United States v Kirby, 16 USCMA 517, 37 CMR 137, and cases cited therein, at page 519.

We deal here not with one of the generally recognized exceptions to the rule of inadmissibility, as discussed in the Manual, supra (see United States v Smith, 13 USCMA 105, 32 CMR 105), but with the extent to which the Government may go to rebut evidence of good character. As noted by the board, relying on paragraph 138*f* (2) of the Manual, the Government may not exceed the scope of the character evidence introduced by the accused. A similar question was before us in United States

v Haimson, supra. While acknowledging the general and absolute rule of exclusion of such evidence, a majority of the Court found that the specific acts there alleged were also a part of the general plan and design by which the accused perpetrated the offenses charged and hence admissible under the exceptions delineated in paragraph 138*g* of the Manual.

No such situation exists here. The accused put in issue his character for peaceableness, which included a statement by one witness that "I have never heard of him being in any fights or arguments whatsoever." This was the basis for the witness' opinion. Two witnesses in rebuttal testified that they pulled liberty with the accused on a number of occasions in the Philippines and that not infrequently they and the accused would *instigate* fights with sailors, as one witness agreed, "to break the monotony." The board found that this testimony exceeded the scope of the character evidence introduced by defense counsel.

We agree. Had the rebuttal testimony been limited to eliciting testimony that the accused had a reputation for fighting or getting into arguments, it would have stayed within the area to which the door had been opened. But once having touched upon specific acts and instances, the rule of exclusion mentioned by Dean Wigmore takes effect. As we said in *Haimson,* supra:

"It was early stated, and has often been reaffirmed, that—despite the obvious utility of such testimony—compelling reasons of auxiliary policy demand its exclusion. Its tendency to provide the triers of fact with an extraneous ethical justification for conviction in disregard of the evidence—or lack of it—in a given case, subjects its use to reprobation as a source of danger. Moreover, the probable inability of an accused—arraigned on specific charges—to be prepared to disprove or justify every act of alleged misconduct with which he may be charged, or which he may at some time have committed, early produced condemnation of this sort of testi-

mony on the ground of undue surprise. Furthermore—and from the point of view of the effective administration of justice—the introduction of such testimony tends unquestionably to multiply and confuse the issues, and to withdraw the minds of the jurors from evidence relating directly to the guilt or innocence of the accused. Clearly, these reasons of policy are applicable with equal force regardless of whether the accepted mode of demonstrating character be opinion evidence, reputation evidence, or both. It is not without significance in this connection that Dean Wigmore states that the rule of exclusion of specific acts 'is so firmly established that it would be held to prevail even in jurisdictions where no express enunciation of it has been made.' Wigmore, supra, § 194." [United States v Haimson, supra, at page 223.]

We pause here to comment on the distinction between cross-examination of character witnesses to test the basis of their testimony and rebuttal testimony offered by the prosecution. In the former instance, such a witness may be interrogated with respect to rumors or reports of particular acts imputed to the accused, and as to what the witness has heard of specific charges of misconduct made against the accused. See Michelson v United States, 335 US 469, 93 L ed 168, 69 S Ct 213 (1948), and Annotation to State v Shull, 131 Ore 224, 282 Pac 237, 71 ALR 1498 (1929). As stated by the Supreme Court in *Michelson:*

> ". . . while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans." [*Ibid.,* at page 479.]

But as we have noted and documented above, the rule as to rebuttal testimony is to the contrary. Just as the accused, in order to establish good character, is not permitted to prove specific acts, custom, or course of conduct, so, too, the prosecution is prohibited from using the same proof to establish bad character. United States v Haimson, United States v Nicholson, and Annotation to State v Shull, all supra. For a thorough analysis of the basic reasoning behind the different rules for this issue, see Zirkle v Commonwealth, 189 Va 862, 55 SE2d 24 (1949).

Holding as we do that this evidence was erroneously admitted, the question of prejudice must be answered. United States v Nicholson, and Zirkle v Commonwealth, both supra.

The board of review specifically did not decide whether this error was prejudicial *per se,* "(the defense failed to object to the testimony in rebuttal)," but premised its holding on the failure of the law officer to instruct, *sua sponte,* on the limited nature for which evidence of other misconduct was admitted and a determination that under the facts of this case the accused was prejudiced thereby.

While we are bound by purely factual determinations of the board of review (United States v Judd, 10 USCMA 113, 27 CMR 187; United States v Remele, 13 USCMA 617, 33 CMR 149), unless such conclusions are arbitrary and capricious, so as to amount to an abuse of discretion (United States v Wheatley, 10 USCMA 537, 28 CMR 103), we are not so bound by a finding of prejudice or lack thereof by authorities below (United States v Yanuski, 16 USCMA 170, 36 CMR 326).

In this case, however, we agree with the board of review that prejudice is apparent. Self-defense was in issue as evidenced by the record and the instructions of the law officer. The instruction was good and well tailored to the facts of the case, and for this we commend the law officer. The court was properly informed, in pertinent part, that, "[t]o avail himself of the right of self-defense a person must not have been the aggressor or intentionally provoked the altercation with the victim." This is the crux of the issue. The inadmissible evidence painted the

accused as an individual given to provoking fights. In his argument to the court, trial counsel referred to the defense evidence of peaceable character and remarked, "Gentlemen, my understanding of the testimony of the accused's character is that he likes to drink and go out and punch out sailors. This to me does not easily reconcile with a peaceable character." The admission of this evidence effectively negated any theory of self-defense.

To the extent that the board of review determined the law officer should have instructed on the limited use to be made of the rebuttal character evidence, it was in error. The evidence itself was simply inadmissible. However, since the question will not arise in a retrial of this case, we need not decide whether an instruction to disregard would have sufficed.

The action directed by the board of review is affirmed.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

I disagree with my brothers' conclusion that the accused was prejudiced by the rebuttal testimony. This testimony did not demonstrate a general disposition or inclination to provoke fights. Rather, it reflected an attitude which has a very special meaning to the members of the military. It showed a person imbued, rightly or wrongly, with such pride in his own armed force as to incline him to test his physical prowess against members of a rival service, merely, as a witness testified, to "break the monotony" of liberty in a foreign port. That kind of conduct is oceans removed from a disposition to fight a fellow Marine, especially one who is his "only friend." I have no doubt that this difference was apparent to, and understood by, the Marine officers constituting the court-martial. In my opinion, therefore, the rebuttal testimony presented nothing which influenced the court members against the accused. United States v Lewis, 14 USCMA 79, 84, 33 CMR 291.

If I am wrong in my assessment of the insignificance of the rebuttal testimony, I am still obliged to disagree with my brothers for another reason. In my opinion, the defense opened the door to the introduction of evidence of specific instances of aggressiveness. Neither of the defense character witnesses was asked to testify to the accused's *reputation* for peaceableness. Instead, each was asked to discuss the accused's day-to-day conduct. Thus, one witness was asked to "tell the court about PFC BALDWIN's peaceableness"; he answered that he had never heard of the accused "being in any fights or arguments whatsoever." The other witness, who had known the accused for only two weeks, was asked to state whether the accused "seem[ed] to be a peaceable person" in "the time that" the witness knew him; he responded: "I would say he was." Since the accused opened the door to inquiry into specific details of his conduct, he has no reason to complain because the prosecution supplied some of the details. See United States v Shaw, 9 USCMA 267, 26 CMR 47.

I would answer the certified question in the negative, and reverse the decision of the board of review.