UNITED STATES, Appellee

v

ROBERT E. BROWN, Private First Class, U. S. Army, Appellant

21 USCMA 522, 45 CMR 296

No. 24,906

July 14, 1972

*Captain Denis E. Hynes* argued the cause for Appellant, Accused. With him on the brief were *Colonel George J. McCartin, Jr., Colonel Arnold I. Melnick, Lieutenant Colonel Joseph E. Donahue, Captain Gary W. Allman,* and *Captain Terrence Ahern.*

*Captain James F. Motley* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway,*

*Captain Richard L. Menson, Captain David E. Wilson,* and *Captain Benjamin P. Fishburne, III.*

## Opinion of the Court

QUINN, Judge:

Two articles of allegedly stolen property were found in the accused's quarters in the course of searches authorized by his company commander. In time, the accused was tried for larceny of these articles and for certain other offenses. He was acquitted of one of the larceny counts, but convicted of the other. On this appeal, he contends, as he did at trial, that the searches were improper because the factual information upon which they were based did not demonstrate the reliability of the informant and probable cause to believe that the accused had possession of stolen property. See United States v Penman, 16 USCMA 67, 76, 36 CMR 223 (1966); United States v Jeter, 21 USCMA 208, 44 CMR 262 (1972).

Captain Bell, commander of the accused's unit, Headquarters and Headquarters Company, 23d Supply and Transport Battalion, was informed by Captain Bailey, commander of B Company, that "[t]wo of his people had reported" to him that the accused had in his hootch an amplifier stolen from Jackson, a member of B Company. Captain Bailey also informed Bell that Jackson was "one of his better" and "more reliable people." At Bell's request, Jackson came to see him.

Jackson advised Captain Bell that a "good friend of his" had been asked by the accused to "help him hook up the amplifier" which he "had just acquired" but was not sure of its hookup. The friend went to the accused's quarters. Previously, he had borrowed Jackson's amplifier and had "used it for some reasonable period." He "knew the make" and "a few distinguishing marks," in the form of dents, on the case of Jackson's amplifier. Although there is no direct evidence of the matter, it may fairly be inferred that before the informant went to the accused's quarters he knew Jackson's amplifier had been stolen from him. The friend informed Jackson of his assistance to the accused. He told Jackson that while his identification of the amplifier in the accused's hootch from its make and dents was "not enough to particularly make it Jackson's," it "looked very much like" Jackson's amplifier.

After Captain Bell "obtained all the data" he could, he, his first sergeant, Sergeant Fricke, Jackson, and another sergeant went to the accused's hootch. The accused was not present. They waited "outside" until he appeared. When he did, a search was made of his quarters. An amplifier was found. It was the same make and model as Jackson's, had the same serial number, and bore other special "identifying marks that had been given . . . [in advance] by Jackson." The amplifier was seized.

At Captain Bell's direction, "everybody" went to the orderly room. There, Jackson informed Captain Bell that a TV set in the accused's quarters, which the captain had also seen, "looked to be that of Specialist Sutherland," who was a member of B Company and who had reported that the set had been stolen. Sergeant Fricke also advised Captain Bell that he had previously seen Sutherland's TV set, and the one in the accused's hootch "looked like" it. The captain called B Company to verify the report of the theft of Sutherland's set. He also had Sutherland come to see him, and he obtained a description of the set from him.

Accompanied by the accused, Captain Bell returned to the accused's room to examine the TV set. He found that the set "matched up" with Sutherland's. It was taken to the orderly room.

Although Jackson was listed on the charge sheet as a prospective Government witness, he did not appear at trial, and no independent evidence of

**523**

the theft of his amplifier was introduced. As a result, at the close of the prosecution's case, the trial judge granted a defense motion for a finding of not guilty of larceny of the amplifier. The validity of the search for the amplifier, however, still presents a viable issue because the accused contends that knowledge of his possession of the TV set, for the theft of which he stands convicted, was obtained during the course of this search. If the search was illegal, information as to discovery of the TV in the accused's room could not be used to justify the second search. United States v Alston, 20 USCMA 581, 583, 44 CMR 11 (1971). We turn, therefore, to examine the factual justification for Captain Bell's search for Jackson's amplifier.

Initially, appellate defense counsel contend that the trustworthiness of Jackson's informant was not established. The argument deals more with the absence of various circumstances of reliability present in other cases than with the quantum and quality of the evidence of reliability in this case. For example, counsel regard as important the fact that Jackson's informant did not, as the informant in United States v Harris, 403 US 573, 29 L Ed 2d 723, 91 S Ct 2075 (1971), make "a declaration against his penal interest," and they suggest that the association between Jackson and the informant was nothing more than that of "barracks 'bunkmates.'" Actually, the record does not indicate whether Jackson and his informant were bunkmates, but it does explicitly indicate that their association was more than that of a casual acquaintanceship founded on propinquity.

Jackson described his informant as "a good friend." He had allowed his friend to use his amplifier for a period of time. By fair inference, it also appears that the friend returned the amplifier, either when requested or at the end of the period for which it was borrowed. Thus, Captain Bell had before him not only the inference that good friends were not likely to lie

524

to one another in a situation as serious as the theft of expensive property, but evidence of past conduct by a friend indicative of trustworthiness and reliability. Also, the report by the friend of dents in the case of the amplifier was, at least inferentially, confirmed by Jackson, who was himself reputed to be "one of the more reliable people" of B Company. In our opinion, these circumstances provided substantial support for Captain Bell's conclusion that Jackson's friend, although unnamed, was worthy of belief.

The second phase of appellate defense counsel's attack on the validity of the search centers on alleged insufficiency of the facts to establish probable cause. It is asserted that the informant "was not able to identify" the amplifier in the accused's possession as that stolen from Jackson.

Concededly, Jackson's friend did not report that he was certain the amplifier in the accused's hootch was Jackson's. However, identity beyond a reasonable doubt is not the kind of certitude required for a search. What is required is that the identification, made by the informant and reported to Captain Bell, convince a reasonably prudent person that the amplifier possessed by the accused was probably Jackson's. United States v Jeter, supra, page 212. In our opinion, that standard was met.

Jackson's friend's identification was not based only on general characteristics of the amplifier, such as make, model, and color. He knew that the amplifier had unique "distinguishing marks" on the case. He found similar marks on the amplifier in the accused's hootch, which the accused admitted he had "just acquired." The marks were not enough to convince him absolutely, but they "looked very much like" those on Jackson's amplifier so that "it did appear to him to be Jackson's." Considering that Jackson's friend had previously used the amplifier and had, as appellate defense counsel concede, ample opportunity to

examine carefully the amplifier in the accused's quarters, his judgment was not mere speculation, but a considered conclusion from observed facts. In our opinion, a prudent person would conclude from this information that the amplifier in the accused's quarters was probably Jackson's. Thus, the initial search for the amplifier was legal, and evidence open to view in the course of that search could properly be used as a basis for the second search. United States v Burnside, 15 USCMA 326, 35 CMR 298 (1965).

The decision of the United States Army Court of Military Review is affirmed.

Judge DUNCAN concurs.

DARDEN, Chief Judge (dissenting):

The decisions of the Supreme Court of the United States seldom involve considerations that must be faced by military commanders in determining the existence of probable cause to search the effects of a person in their organization. This Court nonetheless has consistently applied those decisions in this area. Under the Supreme Court's standards in those cases, I am unable to conclude that probable cause existed to authorize a search of the accused's room and the seizure of the amplifier.

Information from an unknown source or a source uncorroborated as to its reliability is insufficient to establish probable cause to search. Spinelli v United States, 393 US 410, 21 L Ed 2d 637, 89 S Ct 584 (1969); Thompson v White, 406 2d 1176 (CA 5th Cir) (1969); Bailey v United States, 386 F2d 1 (CA 5th Cir) (1967); Potter v United States, 362 F2d 493 (CA 5th Cir) (1966). Spinelli, supra, was not overruled by United States v Harris, 403 US 573, 29 L Ed 2d 723, 91 S Ct 2075 (1971), despite the clear invitation by two of the Justices that this be done. Harris involved the central issue of a "reason for crediting the [informant's] out-of-court statement." Id., at page 584. Otherwise, probable cause was not established.

Jackson, conceded by the Government to occupy a position analogous to that of a law enforcement officer, reported to Captain Bell detailed information, all of which came from an unidentified informant. Nothing in the record establishes the informant's credibility, beyond the bare recital of the information presented. My understanding is that the reliability which must be established is not that of Jackson but of his unidentified informant. In any event, the information he furnished must be corroborated to some extent. See Aguilar v Texas, 378 US 108, 12 L Ed 2d 723, 84 S Ct 1509 (1964). Indeed, the opinion in Harris, supra, emphasized that "a bare statement by an affiant that he believed the informant to be truthful" would not suffice as a factual basis for crediting the report of an unnamed informant. 403 US, at page 579. In the present case, we are left with nothing more than an unknown person's report that Jackson's amplifier was to be found in the accused's room. In my view, this is not enough.

I would reverse the decision of the Court of Military Review, disapprove the findings of guilty of larceny, and remand the record of trial to the Court of Military Review for reassessment of the sentence based on the remaining findings of guilty.