UNITED STATES, Appellee,

v.

Keith W. HUBBARD, Airman, U. S. Air Force, Appellant.

No. 36,170.
ACM S24578.

U. S. Court of Military Appeals.

June 18, 1979.

For Appellant—*Captain Wade B. Morrison* (argued); *Colonel B. Ellis Phillips* (on brief).

For Appellee—*Captain James R. Van Orsdol* (argued); *Colonel Julius C. Ullerich, Jr.* (on brief).

## OPINION

COOK, Judge:

Contrary to his pleas, the appellant was convicted by special court-martial, with members, of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. We granted review to consider the following issues:

I. THE MILITARY JUDGE ERRED IN ADMITTING PROSECUTION EXHIBIT 3 OVER DEFENSE OBJECTION THAT IT WAS THE PRODUCT OF AN ILLEGAL SEARCH.

II. THE BASE COMMANDER WAS *PER SE* DISQUALIFIED FROM AUTHORIZING THE SEARCH BECAUSE OF THE NATURE OF HIS OFFICE.

III. AN ORAL REQUEST FOR AUTHORIZATION TO SEARCH AND ORAL PERMISSION TO SEARCH ARE LEGALLY DEFICIENT.

IV. THE AUTHORIZATION GIVEN SPECIAL AGENT DASHEL TO SEARCH WAS LEGALLY DEFICIENT IN THAT THE INFORMATION UPON WHICH THE AUTHORIZATION WAS BASED WAS UNSWORN.

Issue I is raised in the following context. Trial defense counsel objected to the introduction of Prosecution Exhibit 3, a pretrial statement made by appellant, on the ground that it was a product of an earlier search which was not based on probable cause. Special Agent Gregory A. Dashel, Air Force Office of Special Investigations (OSI), District 20, McChord Air Force Base, Washington, testified that he informed the base commander on the date of the offense (September 12, 1977) that Staff Sergeant Beland, the victim, upon entering his assigned barracks, had observed Airman Hubbard exiting the room directly across the hall from his own. Sergeant Beland noticed that appellant failed to lock his door and thought that was suspicious. When he entered his own room, he saw that his stereo receiver and tape deck had been placed in a tan carrying bag with red and

green stripes. The bag was located by the door, which was not where the items were kept, and there was a green towel lying over the bag. Sergeant Beland then notified the Barracks Chief and a Security Police Investigator, Sergeant McDonald, was summoned. Sergeant McDonald contacted appellant's roommate, Airman Elliot, and asked him to describe the types of luggage owned by the appellant; one of the pieces described matched the one found in Sergeant Beland's room containing his stereo equipment. Additionally, the victim had observed a similar bag in the appellant's room approximately 2 or 3 weeks prior to the offense. The commanding officer questioned him for the purpose of clarifying some of the information and, thereafter, gave the agents authority to search Room 311. The ensuing search did not reveal another bag similar to the one which had been found by the victim in his room.

Although trial counsel indicated that nothing derived from the search would be introduced into evidence, defense counsel asserted that the appellant's confession was a product of the search. Thus, the legality of the search was litigated, and the military judge ruled that the confession was admissible. He did not state the reasons for his ruling. Subsequently, the admissibility of the confession was litigated again, with defense counsel asserting inadmissibility on several grounds, including that it was a product of the search.

Evidence was admitted during an out-of-court hearing which reflected that appellant was interviewed on September 13 and advised of his Article 31/*Tempia*[1] rights. Agent Dashel testified that the appellant was made aware that a bag had been found in the victim's room and the bag was described to appellant. He was also told that the agents were aware that appellant possessed a bag of similar description and that a search of his room failed to produce such a bag. Appellant testified, as follows, concerning the interrogation:

I was shown the bag and that's it. They told me they had fingerprints on the equipment; that they didn't want to bring the equipment in because they didn't want to mess up the fingerprints and that they had a statement from my roommate saying that the bag was mine. And they also said that they had some— something about a search—I'm not sure about that. Oh, a statement from Sergeant Beland that he had seen the bag in my room and that it did belong to me. There wasn't much more said except for—you know, they continuously asked me questions. And that was mainly what it was.

When asked why he confessed, appellant replied:

Sir, the fact that they had a statement from my roommate saying that it was my bag and the fact that they had said they had my fingerprints on the stereo equipment.

The military judge adhered to his original ruling that the statement was admissible, and again gave no reasons. The issue was not relitigated before the court members.

Two theories are now advanced by the Government for upholding the trial ruling. The first is that the search was proper; the second is that the confession was not a product of the search. My Brothers have concluded that the confession was not a product of the search, and, therefore, they do not resolve the question of whether the search was proper. However, the staff judge advocate noted in his post-trial review that "the statement would be inadmissible at trial if, in fact, the search was unlawful," because the appellant had been informed of the search during the interview. In my opinion, it must be assumed, in the absence of evidence to the contrary, that the supervisory authority adopted the analysis of his staff judge advocate. *See United States v. Justice,* 13 U.S.C.M.A. 31, 32 C.M.R. 31 (1962). Thus, I turn to the question of whether the search was based on probable cause.

---

1. Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831; *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

Appellant submits that, as the object of the search was to prove that a bag was not located in his room after the larceny, the search was not proper. However, proof of a negative can be probative under some circumstances. *See* 2 Wigmore, Evidence § 664 (3d ed. 1940). Indeed, the absence of a fact can give rise to an inference of the existence of another fact. Paragraph 138*a* (2), Manual for Courts-Martial, United States, 1969 (Revised edition); *see United States v. Coates,* 20 U.S.C.M.A. 132, 42 C.M.R. 324 (1970); *United States v. Baldwin,* 17 U.S.C.M.A. 72, 76, 37 C.M.R. 336, 340 (1967); *People v. Van Gaasbeck,* 189 N.Y. 408, 82 N.E. 718 (1907). Furthermore, a search for mere evidence is proper. *United States v. Whisenhant,* 17 U.S.C.M.A. 117, 37 C.M.R. 381 (1967). As noted in *United States v. Guerette,* 23 U.S.C.M.A. 281, 284, 49 C.M.R. 530, 533 (1975), the fundamental concepts in evaluating the legality of a search are:

First, the right to be secure in one's person and property is protected against searches and seizures which are unreasonable. *United States v. Unrue,* 22 U.S.C.M.A. 466, 47 C.M.R. 556 (1973); *United States v. Torres,* 22 U.S.C.M.A. 96, 46 C.M.R. 96 (1973). Secondly, and putting aside any question of consent, when evaluating the showing of probable cause to support a search which is authorized, such showing "must be tested and interpreted . . . in a common sense and realistic fashion." *United States v. Ventresca,* 380 U.S. 102, 108, [85 S.Ct. 741, 13 L.Ed.2d 684] (1965); *United States v. Scarborough,* 23 U.S.C.M.A. 51, 48 C.M.R. 522 (1974). Thirdly, an authorization to search must be justified by facts presented to the issuing officer that would lead a reasonable, prudent person to conclude that the matter for which the search is to be made constitutes evidence relevant to a crime, and that the matter is at the place to be searched. *United States v. Hennig,* 22 U.S.C.M.A. 377, 379, 47 C.M.R. 229, 231 (1973). Finally, when information which is the foundation for the exercise of the authority to search is supplied by an informant, circumstances must be laid out on the record tending to prove the reliability of the informant. *United States v. Llano,* 23 U.S.C.M.A. 129, 130, 48 C.M.R. 690, 691 (1974). [Footnote omitted.]

The present case does not involve an informant; therefore, we are not concerned with the last principle. Thus, the issue is narrowed to a question of whether, under the circumstances presented to the commanding officer, a reasonable, prudent man would have concluded that the matter sought was evidence of a crime and was located in the area to be searched. In judging the quality of the requisite evidence, the standard is not "beyond a reasonable doubt." *United States v. Brown,* 21 U.S.C.M.A. 522, 524, 45 C.M.R. 296, 298 (1972); *see United States v. Sam,* 22 U.S.C.M.A. 124, 46 C.M.R. 124 (1973). *See also United States v. Giacalone,* 541 F.2d 508 (6th Cir. 1976). In *United States v. Sam, supra,* the Court observed that a statement that a wallet was similar to the one which had been stolen was sufficient to satisfy the requirement of probable cause. The Court's comments on the matter bear repeating:

Next, the appellant argues that Lyons' identification of the wallet from the photograph was inadequate. Is it required that such an identification be strictly positive before probable cause for a search exists? In these days of super mass production when identical objects are manufactured, the positive identification of such items as one's own often is impossible. Requiring such positive identification of personal property as a legal requirement to meet probable cause standards would tend to rule out grants of authority to search for many things which are otherwise of legitimate evidentiary value, solely on the happenstance that many similar things are in existence elsewhere. We believe that the information concerning the wallet communicated to and understood by Colonel Roberts satisfies probable cause requirements of paragraph 152 of the Manual for Courts-Martial, United States, 1969 (Revised edition), which provides in part as follows:

"Probable cause for ordering a search exists when there is reason to believe *that items of the kind* indicated above as being properly the subject of a search are located in the place or on the person to be searched." [Emphasis supplied.]

*Id.* 22 U.S.C.M.A. at 128–9, 46 C.M.R. at 128–9 (footnote omitted).

Here, the authorizing officer was notified that a tan bag with red and green stripes had been found by the victim and both the victim and the appellant's roommate confirmed that appellant owned a bag which fit this description. Additionally, the accused had been observed in the area immediately before the victim discovered the crime. Obviously, the incriminating circumstance would be the absence of such a bag in the appellant's room because the bag had been discovered by the victim in his room. I am satisfied that there was a sufficient showing of probable cause to authorize a search for proof of this incriminating circumstance.

Issue II has been resolved against the appellant by *United States v. Ezell,* 6 M.J. 307 (C.M.A.1979).

On further examination of issues III and IV, it appears they were not litigated at trial, which requires that they be vacated as improvidently granted. *United States v. Massey,* 7 M.J. 49 (C.M.A.1979); *United States v. Powell,* 7 M.J. 48 (C.M.A.1979).

The decision of the United States Air Force Court of Military Review is affirmed.

FLETCHER, Chief Judge and PERRY, Judge (concurring in the result):

Because we believe that the search of the appellant's room had no impact on the appellant's determination to make the statement at issue, we join in affirming the decision below.