OPINION OF THE COURT AND ACTION ON PETITION FOR NEW TRIAL
WERNER, Senior Judge:
Contrary to his pleas, the appellant was convicted in the Republic of Panama in February 1992, by a general court-martial composed of officer members of making a false official statement, rape, conduct unbecoming an officer and a gentleman (three specifications), and committing an indecent assault in violation of Articles 107, 120, 133, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 907, 920, 933, and 934 (1988) [hereinafter UCMJ].[1] He was sentenced to dismissal from the service, confinement for six years, and forfeiture of all pay and allowances. The convening authority approved the sentence.
Of the issues presented to this court, in briefs from appellate defense counsel and the appellant, pro se, and in the petition for new trial, only two merit discussion. These are:
I. WHETHER THE EVIDENCE ESTABLISHING THE OFFENSE OF RAPE IS LEGALLY AND FACTUALLY SUFFICIENT BEYOND A REASONABLE DOUBT.
II. WHETHER THE APPELLANT IS ENTITLED TO A NEW TRIAL AS A RESULT OF NEWLY DISCOVERED EVIDENCE.
I. Sufficiency Of The Evidence
A. Facts
The appellant was an assistant professor of military science at St. John’s University in Queens, New York. His duties included teaching classes, recruiting students into the Reserve Officers Training Corps (ROTC), and effecting liaison with local Army Reserve units. Odette M was a student at the university who had formerly been a member of the ROTC detachment but had been eliminated from the ROTC program for medical reasons. In early 1987, she intended to reenter the program and had a part-time job in the offices of the ROTC detachment. In addition to his regular duties, the appellant counseled Odette concerning her application for reentry into the ROTC program. On one occasion, he invited her and a female ROTC cadet to dinner at his quarters at Fort Totten,-New York. Odette did not have a romantic rela *878 tionship with the appellant and, in fact, was engaged to be married to a Navy recruiter.
One day during the month of March 1987, Odette came to work complaining about back pains. The appellant offered to loan her a massaging device and to drive her to his quarters where it was located. She accepted his offer. At the appellant’s quarters, he invited Odette into his bedroom where, according to Odette’s testimony, he physically overpowered her, used the massaging device to sexually arouse her, and then raped her. She further testified that she struggled and screamed in protest, but that her efforts were to no avail and her screams were muffled by the appellant holding her neck and pushing her face into a pillow. Afterwards, the appellant drove her to her fiance’s office. His nineteen-year-old son accompanied them part of the way.
Odette told no one of the incident because, she testified, she was shocked, traumatized, and thought she would not be believed. She said she accepted the ride with appellant and his son to her fiance’s office because it was the only way she could leave the post. Only after the appellant’s commander called her concerning another allegation of “inappropriate behavior” against the appellant, did she reveal the incident to him nearly a year later in 1988.
Two defense witnesses who were present in-the appellant’s quarters at about the time the rape allegedly occurred did not corroborate Odette’s version of the events. Ms. Wendy Lazarus, an ROTC cadet who resided in the appellant’s quarters as a permanent house guest, testified that Odette visited the appellant’s quarters several times. On one of those occasions, she came home to find Odette having dinner with the appellant. Subsequently, while studying in an adjacent room, she “heard an electrical noise, a buzzing; ... banging, moaning; heaving (sic) breathing like sighing.” She did not hear Odette protesting or crying for help and concluded that Odette was engaging in sex with the appellant. She left the quarters because she was disturbed by the noise. Later, she saw the appellant using a blow dryer on his mattress. He said the bed was wet from Odette’s orgasms.
The appellant’s son testified that he arrived home and interrupted the appellant and Odette as they were having sex in the latter’s bedroom. Embarrassed, he left the room and went to Wendy Lazarus’ room where she acknowledged knowing about the sexual activity. He also did not hear Odette complain or object to the sexual activity. Later, his father drove him to school and Odette accompanied them. He opined that she did not act as though she had been raped.
Captain Holly Fieldgrove, formerly an ROTC cadet at St. John’s University, testified that she had known Odette at St. John’s and was the maid of honor at her wedding. In mid-1987, she sponsored a bridal shower for Odette at the appellant’s quarters where she was “house-sitting” in the appellant’s absence. Captain Fieldgrove said that Odette willingly went with her to the party, did not appear to suffer “apprehension, fear, or anxiety” during the occasion, and seemed to enjoy herself. However, on cross-examination, Captain Fieldgrove admitted that the appellant had been her mentor while she'was in ROTC and that, after she had been commissioned, she had a sexual relationship with him.
Odette testified that she was surprised by the bridal shower and that Captain Field-grove had not revealed its location to her until they arrived at the appellant’s quarters.
B. Legal Analysis
The standard for determining the legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the government, the trier of fact could rationally find the existence of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); United States v. Blocker, 32 M.J. 281 (C.M.A.1991); United States v. Hart, 25 M.J. 143 (C.M.A.1987). The standard for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this court is itself convinced of the appellant’s guilt beyond a reasonable doubt. United States v. Turner, 25 M.J. 324 (C.M.A.1987); UCMJ *879 art. 66(c), 10 U.S.C. § 866(c). In applying the latter criterion we have held:
Our statutory review authority is uniquely broader than that afforded most appellate courts.
A Court of Military Review has independent fact-finding power. In the exercise of that power, the court can “weigh the evidence ... and determine controverted questions of fact” differently from the court-martial. Article 66(c) Uniform Code of Military Justice, 10 U.S.C. § 866; United States v. Baldwin, 17 U.S.C.M.A. 72, 37 C.M.R. 336 (1967); United States v. Remele, 13 U.S.C.M.A. 617, 33 C.M.R. 149 (1963).
United States v. Sikorski, 45 C.M.R. 119, 122 (C.M.A.1972). Our power to overturn a court-martial’s factual findings is circumscribed by that language in Article 66(c), UCMJ, 10 U.S.C. § 866(c) which cautions us to bear in mind that the “trial court saw and heard the witnesses.” Thus, in cases where witness credibility plays a critical role in the outcome of the trial, we hesitate to second-guess the court’s findings. United States v. Albright, 26 C.M.R. 408 (C.M.A.1958). Conversely, where those findings do not depend on the court’s observation of the witnesses, our independence as a fact-finder should only be constrained by the evidence of record and the logical inferences emanating therefrom.
United States v. Johnson, 30 M.J. 930, 934 (A.C.M.R.1990) (alteration in original) (footnote omitted).
There is no question that the evidence is legally sufficient since Odette’s unequivocal testimony that the appellant had sexual intercourse with her by force and without her consent, when viewed in a light most favorable to the government, meets the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
We also find that the evidence is factually sufficient as there is ample evidence of record to support the court members’ determination. The court considered the observations of the defense’s witnesses concerning Odette’s behavior during and after the rape, considered the fact that she didn’t report the rape for nearly a year, and decided to believe Odette. We hold that the court’s verdict is supportable and are satisfied that it is accurate beyond a reasonable doubt.
Odette’s testimony was not directly contradicted by the defense’s evidence relative to the appellant’s use of force and her failure to consent to his actions. Rather, the defense’s opposing evidence only inferred that she had consented to having sex with the appellant. Odette’s version of the events was more plausible. It was unlikely that she would have consented to the appellant’s advances since she was engaged to be married. It was likely that she would have accepted the appellant’s offer to go to his apartment since he had been helping her in her efforts to reenter the ROTC program. It was likely that her screams would not have been heard if her face was being pressed into a pillow. Finally, it was likely that she would not have told anyone about the incident if she thought she would not be believed and if she thought it would have affected her impending marriage.
Likewise, the court may legitimately have concluded that the testimony of the defense witnesses was mistaken or biased. Both Wendy Lazarus and the appellant’s son may have misunderstood what occurred in the appellant’s bedroom since they did not witness the entire incident. Moreover, their relationships with the appellant may have affected their credibility in the judgment of the court members. Similarly, Captain Fieldgrove’s professional and personal relationship with the appellant may have weakened her testimony. While we have the power to overturn the court’s verdict on factual grounds, the foregoing factors convince us there is no basis for doing so here.
We have considered the other errors assigned as well as the matters submitted by the appellant pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982), and find them to be without merit.
II. Petition For A New Trial
Under Article 73, UCMJ, 10 U.S.C. § 873, a new trial may be granted because of newly discovered evidence if, upon petition of the accused within two years after approval of the sentence by the convening authority: 1) The evidence was discovered after the *880 trial; 2) The evidence is not such that it would have been discovered by the petitioner at the time of trial in the exercise of due diligence; and 3) The newly discovered evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused. Rule for Courts-Martial 1210(f)(2); United States v. Williams, 37 M.J. 352 (C.M.A.1993). Petitions for new trial are not favored and, absent a manifest injustice, will not normally be granted. Id. at 356. The burden of establishing their merit falls heavily on petitioners. United States v. Giambra, 38 M.J. 240 (C.M.A.1993); United States v. King, 27 M.J. 545 (A.C.M.R.1988), pet. denied, 29 M.J. 329 (C.M.A.1989). The “newly-discovered evidence” which the appellant has proffered in this case, an affidavit from a Lieutenant Colonel (LTC) Henderson, may warrant granting him a new trial. However, the affidavit presents more questions than it provides answers on critical issues in the ease. Therefore, we are constrained to order an evidentiary hearing to clarify its ambiguities before we can determine whether a new trial is warranted. See United States v. Parker, 36 M.J. 269 (C.M.A.1993).
A. Facts
After Odette complained to the appellant’s commanding officer in 1988, she was called by LTC Henderson who was investigating another allegation of sexual misconduct against the appellant. What Odette told him about the rape is unclear and is at the heart of our inquiry. Lieutenant Colonel Henderson completed his investigation and filed a report with ROTC headquarters which may have contained Odette’s remarks to LTC Henderson. However, the report could not be located and was presumed to have been destroyed in the normal course of business prior to preferral of the charges in this ease.
Odette initially testified during the pretrial hearing that she did not remember speaking with LTC Henderson about being raped. Later in the trial, she implied that she may have spoken with him by telephone. The appellant’s military and civilian trial defense counsel called LTC Henderson in Hawaii during a recess in the trial. He informed .them that he remembered conducting the investigation against the appellant and speaking with Odette but could not remember the substance of what she had said. He indicated that he could not remember details because of the passage of time, the unavailability of his records, and the surprise nature of the telephone call.
In a post-trial affidavit, one of the appellant’s trial defense counsel stated that LTC Henderson remembered Odette saying she felt she had been compromised but was unwilling to testify against the appellant. Both counsel believed that, because of his memory lapse, LTC Henderson would not have been a helpful witness. Both prosecutors spoke with LTC Henderson and concurred with the defense’s assessment.
In June or July, 1992, LTC Henderson told the appellant’s civilian trial defense counsel his memory of the events of 1988 had returned after that counsel called him in connection with the filing of an appeal. LTC Henderson memorialized his recollections in an affidavit dated February 10, 1993. He recalled investigating the appropriateness of an unsatisfactory efficiency report for the appellant arising out of a fraternization incident. He remembered the telephone conversation with Odette which he described as follows:
Although I do not recall specifically what I asked her, I believe my questions were open ended such as “tell me what happened” followed by several follow-up questions. During her comments and answers to my questions, I recall [Odette] was upset about the incident. She appeared confused about the situation and her role. At some point I asked her if Maj. Niles forced her to have sex. Although I do not recall her exact words, her answer was essentially “no”.
I recall her telling me she entered his bedroom for counselling and a massage, not to have intercourse. She never told him to stop when he continued beyond simple massage. This may have been due to her confusion and embarrassment over the way the situation developed. I recall, *881 essentially, concluding from the phone interviews, I did not believe Maj. Niles forced her to have intercourse. Rather, he may have assumed her consent because she did not protest.
B. Legal Analysis
We have no hesitation in concluding that LTC Henderson’s affidavit meets the first two requirements for granting a new trial. Newly discovered evidence may include evidence resulting from a prospective witness regaining his memory of salient facts after trial. United States v. Bourchier, 5 U.S.C.M.A. 15, 17 C.M.R. 15 (1954). Moreover, the evidence was not reasonably discoverable prior to trial. The appellant’s counsel did not learn of LTC Henderson’s whereabouts until trial. When they called him from Panama, he told them that he remembered conducting an investigation of the appellant in 1988 and speaking with Odette but that he was unable to recall precisely what she said at that time. Apparently, the trial counsel also received the same response from LTC Henderson. Under the circumstances, we are satisfied that the trial defense counsel acted diligently in their abortive quest for the evidence now proffered to us in support of the appellant’s petition. See United States v. Williams, 37 M.J. at 357.
We are not certain whether the evidence contained in LTC Henderson’s affidavit would produce a more favorable result for the appellant. The government’s case rested almost exclusively on Odette’s credibility which, though weakened by the tardiness of her original complaint and discredited by the testimony of the defense’s on-the-scene witnesses, could have been rejected by the court-martial. As there was no direct evidence contradicting Odette’s accusation, LTC Henderson’s affidavit may possibly be the strongest evidence supportive of the appellant’s case. If, as the defense contends, LTC Henderson’s affidavit contains evidence that Odette said she had not been raped, then it becomes “noncumulative, uncontradicted impeachment evidence ... relevant not only to a material issue in this case [whether Odette consented to the appellant’s acts] but the dispositive issue in this case — the victim’s credibility.” Id. As such, it would probably undermine the government’s ease and cause a different result thus warranting a new trial. However, if, as the government contends, the affidavit contains only an equivocal remembrance of LTC Henderson’s impressions of what Odette meant during their conversation about the rape, then it would not constitute impeachment of her trial testimony and would not be sufficient to cause a different result or warrant a new trial.
In an appropriate case, we might be able to resolve the ambiguity in LTC Henderson’s affidavit via supplementary affidavits from him or other witnesses with knowledge of Odette’s comments to him. See United States v. Leuns, 38 M.J. 501 (A.C.M.R. 1993). However, this is not such a ease. Instead, we believe an evidentiary hearing would enable us to obtain a more accurate result by subjecting LTC Henderson to examination under oath by representatives of the appellant and the government. A Court of Military Review “can order a DuBay [United States v. DuBay, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967) ] hearing for the express purpose of assisting it in determining whether the petition for new trial should be granted and a new trial ordered.” United States v. Parker, 36 M.J. at 273.
Accordingly, this court affirms the approved findings of guilty of Charges I, II, and III and their Specifications. Action on the approved findings of guilty of the Additional Charge and its Specification, on the sentence, and on the Petition for New Trial is held in abeyance pending completion of an evidentiary hearing, as described below, to determine whether a new trial should be granted.
The record of trial is returned to The Judge Advocate General for an evidentiary hearing before a military judge appointed by an appropriate convening authority. The military judge will conduct a hearing to determine precisely what LTC Henderson remembers about his conversation with Odette in 1988 concerning her allegation of rape by the appellant and the basis for his recollections. The military judge will provide this court with findings of fact to include a determination as to LTC Henderson’s credibility. *882 If the convening authority determines it is impracticable to hold the evidentiary hearing, the record will be returned to this court with an explanation for that determination.
Judge LANE and Judge RUSSELL concur.

. The specifications under Article 133 allege that the appellant made a false unofficial statement, communicated indecent language to a female soldier, and committed an indecent act in the presence of two enlisted soldiers.