UNITED STATES, Appellee

v.

Louis B. NILES, Major, U.S.
Army, Appellant.

No. 95–0738.
Crim. App. No. 9200448.

U.S. Court of Appeals for
the Armed Forces.

Argued June 6, 1996.

Decided Dec. 17, 1996.

For Appellant: *Lawrence W. Andrea* (argued); *Captain Michael E. Hatch* (on brief); *Michael B. Rainey, Colonel Stephen D. Smith, Lieutenant Colonel John T. Rucker, Major Roy H. Hewitt, Captain Blair Jacobs,* and *Captain Don F. Pollack.*

For Appellee: *Captain Joanne P. Tetreault* (argued); *Colonel John M. Smith, Lieutenant Colonel Eva M. Novak,* and *Major Anthony P. Nicastro* (on brief); *Captain Eugene E. Baime.*

## Opinion of the Court

SENTELLE, Circuit Judge:[1]

On February 16, 1992, appellant, a member of the California National Guard on active duty in Title 10 status, was tried by a general court-martial composed of members at Fort Clayton, Panama. He was convicted, contrary to his pleas, of making a false official statement, conduct unbecoming an officer (3 specifications), and indecent assault, in violation of Articles 107, 133, and 134, Uniform Code of Military Justice, 10 USC §§ 907, 933, and 934, respectively. Two days before commencement of this trial, the Additional Charge and its specification alleging rape in May of 1987 at Fort Hamilton, New York, in violation of Article 120, UCMJ, 10 USC § 920, was referred to trial. Appellant waived the 5–day waiting period prescribed by Article 35, UCMJ, 10 USC § 835. He was also convicted of this offense, contrary to his pleas. His approved sentence extends to dismissal from the service, confinement for 6 years, and total forfeitures.

In its initial review (39 MJ 878), the then-Court of Military Review affirmed the findings as to all original Charges but held in abeyance its opinion regarding the Additional Charge pending a factfinding hearing pursuant to *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967), on the issue of appellant's entitlement to a new trial because of newly-discovered evidence. This hearing was held before Judge Mogridge at Fort Leavenworth, Kansas, on May 13, 1994. Having the benefit of that hearing, the now-Court of Criminal Appeals determined that appellant had not satisfied his heavy burden of demonstrating his entitlement to a new trial. Accordingly, it affirmed the findings as to the rape charge and the approved sentence.

1. Judge David B. Sentelle of the United States Court of Appeals for the District of Columbia Circuit, sitting by designation pursuant to Article

On March 19, 1996, we granted review on two issues:

### I

WHETHER THE ARMY COURT OF CRIMINAL APPEALS ERRED BY DENYING THE PETITION FOR NEW TRIAL BASED ON THE GROUNDS OF NEWLY DISCOVERED EVIDENCE. THE TESTIMONY GIVEN BY LTC HENDERSON DURING THE LIMITED HEARING HELD PURSUANT TO *UNITED STATES v. DUBAY,* 17 USCMA 147, 37 CMR 411 (1967), CLEARLY SHOWS THAT HIS TESTIMONY WOULD PRODUCE A SUBSTANTIALLY MORE FAVORABLE RESULT FOR MAJOR NILES AT A NEW TRIAL.

### II

WHETHER MAJOR NILES WAS DENIED THE RIGHT TO A FAIR TRIAL WHEN THE GOVERNMENT FAILED TO PREFER THE CHARGE OF RAPE UNTIL THREE YEARS AND 11 MONTHS AFTER THE ALLEGATION WAS MADE AND FOUR YEARS AND 11 MONTHS AFTER THE INCIDENT, RESULTING IN SUBSTANTIAL PREJUDICE TO MAJOR NILES' ABILITY TO PRESENT AN ADEQUATE DEFENSE WHERE MATERIAL WITNESSES' MEMORIES HAVE FADED AND NOTES OF A PRIOR INVESTIGATION ON THE INCIDENT, INCLUDING NOTES TAKEN OF THE INVESTIGATOR'S INTERVIEW WITH THE ALLEGED VICTIM, WERE LOST.

### PETITION FOR NEW TRIAL

A petition for new trial is not favored and, absent a manifest injustice, will not be granted. *United States v. Williams,* 37 MJ 352, 356 (CMA 1993). The petitioner bears the heavy burden of establishing that a new trial is a proper remedy. *United States v. Giambra,* 38 MJ 240 (CMA 1993). RCM 142(f), Uniform Code of Military Justice, 10 USC § 942(f).

1210(f)(2), Manual for Courts–Martial, United States (1995 ed.), establishes that a new trial may be granted pursuant to Article 73, UCMJ, 10 USC § 873, if a petition is filed by the accused within 2 years of approval of the sentence by the convening authority. A petition based on newly-discovered evidence must demonstrate that

(1) the "evidence was discovered after the trial";

(2) the evidence was not discoverable by the accused "at the time of trial in the exercise of due diligence; and"

(3) the "evidence, if considered by a court-martial in the light of all other pertinent evidence, would probably produce a substantially more favorable result for the accused." RCM 1210(f)(2).

In reviewing the decision of the court below that appellant failed to establish the third element of this test, this Court must now determine whether that court abused its discretion in reaching that decision. *United States v. Sztuka,* 43 MJ 261, 268 (1995); *United States v. Scaife,* 749 F.2d 338 (6th Cir.1984).

The Government's only evidence in substantiation of the charge of rape was the testimony of the victim (hereafter OF). At the time of the offense, OF was a student at St. John's University, where appellant was serving as an assistant professor of military science. Having been previously dismissed from the Reserve Officer Training Corps program for medical reasons, OF was working in the department's offices. On a particular occasion in the office early in 1987, OF was complaining of a backache. She accepted the invitation of appellant to borrow a massager which he had at his quarters, and she accompanied him to his quarters to get the device. Once in the quarters, OF accompanied appellant to his bedroom and complied with his suggestion to lie face down on his bed while he demonstrated use of the massager on her.

According to OF, appellant claimed that her clothes were inhibiting the benefit of the massage, and he began removing them, despite her protests. Although she claimed to struggle, scream, and continuously protest against appellant's actions, OF testified that appellant held her face down underneath a pillow, removed her sweatpants, and used the massager over her body, eliciting a series of violently pleasurable sexual releases from her prior to his commencement of sexual intercourse. She went on to state that, shortly after appellant had apparently achieved his own climax, appellant's son called out from somewhere in the house. Appellant ordered her to be quiet and to get dressed. OF stated that after she repaired to the kitchen and awaited appellant, she talked to his son and then accepted a ride with appellant and his son back to campus. Appellant took her to the office where her husband (then fiancé) worked as a Navy recruiter. After accompanying OF to her fiancé's office and talking with them, appellant left. OF claimed that she was too distraught to report the attack to anyone at the time and never made any report until questioned by appellant's commanding officer over a year later.

Not surprisingly, the defense had a different theory of what occurred between appellant and OF in early 1987. What was surprising was the amount of evidence which the defense was able to produce on a charge which had been referred only 2 days prior to trial.[2] In addition to attacking the obvious aspects of OF's testimony which did not comport with an episode of forcible or nonconsensual intercourse, the defense produced three witnesses.

Appellant's son testified, contrary to OF's version of the events, that he had indeed walked into his father's bedroom looking for the car keys and saw her on top of his father in an apparent act of intercourse before his father hurriedly covered them with a sheet. He also testified that he discussed his embarrassing disturbance of his father with Ms. Wendy Lazarus, a student at St. John's who was living at appellant's quarters. Ms. Laza-

---

2. The record strongly implies that the Government had this charge referred to trial in order to allow use of the evidence of the alleged rape while circumventing the restrictions of Mil. R.Evid. 404(b), Manual for Courts–Martial, United States, 1984.

rus testified that she observed appellant and OF having dinner on that evening, after which they went into appellant's bedroom. Then, through the door which adjoined her room, Ms. Lazarus heard an electrical buzzing noise, along with moaning and heavy breathing coming from appellant's room. After talking to appellant's son, she left the house because she was unable to study due to the distractions. Ms. Lazarus disclosed that, in a later conversation with her, appellant openly admitted the sexual activity with OF and said that he had to blow dry the mattress due to the multiple orgasms OF experienced.

The defense also called Captain (CPT) Holly Fieldgrove who testified that she saw appellant and OF together on occasions subsequent to the alleged rape. This included when OF and CPT Fieldgrove went to appellant's quarters to clean them in preparation for OF's bridal shower and then to attend the shower. CPT Fieldgrove testified that OF never displayed any apprehension about being at the quarters or near appellant after the date of the alleged rape, that OF never spoke negatively of appellant, and that OF had even hinted that sexual activity had occurred between her and appellant.

 Seeking additional evidence to attack the already-incredible story of the victim, the defense sought to call Lieutenant Colonel (LTC) Thomas Henderson, who had been appointed as an investigating officer to investigate the appropriateness of an adverse officer efficiency report (OER)[3] received by appellant. When he was initially contacted, LTC Henderson remembered speaking with OF, but he was unable to recall the details of his interview.[4] Subsequently, LTC Henderson provided an affidavit, dated February 10, 1993, in support of

appellant's efforts to obtain a *DuBay* hearing, which provided a more detailed recollection of his interview with OF than he was able to provide before trial. As previously indicated, the court below concluded that a *DuBay* hearing regarding this new evidence would assist in their consideration of the petition for new trial.

At the *DuBay* hearing, although he was unable to recall the exact details of the questions and answers during his March 1988 interview with OF, LTC Henderson testified clearly on key issues. He was certain that he had probed all aspects of the crime of rape, including suggesting the term to OF. Further, LTC Henderson was certain that OF, neither in direct words nor by implication, had conveyed the notion that she had been raped by appellant. Finally, LTC Henderson recalled that OF admitted that she had never told appellant that she did not consent to their act of sexual intercourse.

Despite this testimony, the court below concluded that LTC Henderson's testimony would not have produced a substantially more favorable result for appellant. That court focused upon the fact that LTC Henderson could not recall the specific questions and responses which occurred during his interview with OF and the fact that the general impression OF had conveyed during that interview did not substantially conflict with the pretrial statement she had provided to the Naval Investigative Service.

We cannot concur. The lack of specific detail in LTC Henderson's recollection is to be expected and actually enhances the credibility of his testimony. It is unrealistic to expect a witness to recall detailed, specific language of a telephonic witness interview which had occurred over 6 years previously.[5]

---

3. The adverse OER was received for appellant's duties during this assignment at St. John's; however, it was based upon incidents of fraternization other than the incident with OF.

4. Without prior warning, the defense and prosecution had telephoned LTC Henderson at his duty station in Hawaii from Panama during a recess in the trial. Given the passage of time and the surprise nature of the call, LTC Henderson did not recall many details of his interview with OF. Based on that telephone call,

both the defense and the prosecution concluded that LTC Henderson would not be a helpful witness and chose not to call him at trial.

5. LTC Henderson had made written notes of his conversation with OF. Those notes were forwarded with his written report of investigation but were subsequently lost or destroyed. That report of investigation was reviewed by the Staff Judge Advocate at Fort Totten, New York, at the time, and no charges were brought against appellant on the basis of that investigation.

On the other hand, LTC Henderson was unquestionably clear in his recollection of the substance of the interview and, in particular, that OF never gave appellant (or LTC Henderson) any reason to believe the sexual acts in May of 1987 were nonconsensual. These facts from the *DuBay* hearing and LTC Henderson's affidavit simply do not comport with the claim of the court below that LTC Henderson's recollection was no better than it had been during the surprise telephone call on the day of trial.

■ That court also underestimated the obvious value of that testimony. Judging the value of LTC Henderson's testimony against the victim's pretrial statement does not provide a proper comparison. At trial, OF told a dramatically different version of the incident[6], replete with claims of violent objections to the rape, including screaming and physical efforts to resist. Her previous inconsistent statement to an officer appointed to investigate the incident could have had a dramatic impact upon the members' view of the victim's in-court testimony.

Previously, we have held that when evidence is discovered which is directly relevant to a material issue in the case, denial of a motion for a rehearing based upon that newly-discovered evidence is an abuse of discretion. *Williams*, 37 MJ at 354. In *Williams*, the credibility of the testimony of the victim of a rape was the dispositive issue in the case. The subsequent discovery of non-cumulative, uncontradicted evidence impeaching that credibility was a sufficient basis to require a rehearing. 37 MJ at 357.

But for the fact that the newly-discovered evidence in this case is more compelling, this case is indistinguishable from *Williams*. In this case, the inescapable conclusion is that the jury chose to believe the victim's trial testimony of the events, despite defense efforts to show its impossible or incredible nature, rather than the contradicting version of the events offered by three defense witnesses. By finding guilt beyond a reasonable doubt, the members necessarily questioned the veracity or motives of the defense witnesses in providing their testimony. Given that these witnesses were the son and the friends or paramours of appellant, the members' decision has an understandable basis.

In LTC Henderson, however, appellant would have been able to provide the testimony of an impartial, field-grade officer specifically charged with investigating the alleged incident between the victim and appellant. His testimony would have significantly contradicted OF's trial testimony, and it would have been substantially consistent with the version of the events presented by the defense witnesses. We simply cannot agree that providing this impartial foundation for the other more questionable defense evidence might not have led to establishment of a reasonable doubt. Further, in a case where the record discloses such a dichotomy of evidence, this Court is troubled by being in the position of attempting to assess the impact of important evidence on review rather than leaving such an evaluation to the factfinder.

The evidence of record in this case and the evidence which the factfinder did not hear raise almost the identical concerns that this Court faced in *United States v. Singleton*, 41 MJ 200 (1994). In that case, the newly-discovered evidence also went to the crux of the charge of rape—whether the prosecutrix was testifying truthfully regarding an act of allegedly nonconsensual sex. This Court was forced to conclude that, where the newly-discovered evidence directly contradicted key elements of a crime alleged, due process favors a more complete trial. 41 MJ at 206–07.

Because the court below did not evaluate the impact of LTC Henderson's impartial potential testimony against the victim's already questionable version of the events presented at trial, it committed an error in judgment in concluding that LTC Henderson's testimony clearly would not produce a more favorable result for appellant at a new trial. *Sztuka*, 43 MJ at 268. This

---

**6.** The trial version was also inconsistent with OF's pretrial statement to the Naval Investigative Service.

error in judgment renders their conclusion regarding the efficacy of LTC Henderson's testimony at a new trial an abuse of discretion. *United States v. Houser*, 36 MJ 392, 397 (CMA 1993).

## PRE-PREFERRAL DELAY

The Government preferred the Additional Charge of rape within 1 month of the expiration of the 5–year statute of limitations.[7] No explanation for this delay is apparent because all the evidence available to the Government had been developed within 18 months of the incident by three subsequent investigations. Moreover, the record implies that trial counsel had the Additional Charge preferred so that the testimony, which he intended to use at trial anyway, would not run afoul of Mil.R.Evid. 404(b), Manual, *supra*. *Cf. United States v. Reed*, 41 MJ 449 (1995).

Furthermore, the pre-preferral delay in this case impacted the ability of appellant to present an adequate defense. Specifically, the defense could not present the testimony of LTC Henderson because the passage of time had dulled his recollection of his interview of the victim, and it had caused his notes of the investigation and conversation with her to be lost. These facts create the specter of a delay which gave the Government a tactical advantage over the accused. *See United States v. Lovasco*, 431 U.S. 783, 795, 97 S.Ct. 2044, 2051, 52 L.Ed.2d 752 (1977).

However, in light of our decision that the petition for new trial due to newly-discovered evidence should have been granted, the Court need not reach the second granted issue regarding the potential prejudice resulting from the pre-preferral delay.

The decision of the United States Army Court of Criminal Appeals is reversed as to the Additional Charge and its specification and as to the sentence. The findings of guilty to the Additional Charge and its specification are set aside, as is the sentence.

The record of trial is returned to the Judge Advocate General of the Army for remand to the convening authority. The convening authority may order a new trial on the Additional Charge and its specification or may dismiss them and order a sentence rehearing on the remaining findings of guilty.

Chief Judge COX and Judge SULLIVAN concur.

GIERKE, Judge, with whom CRAWFORD, Judge, joins (dissenting):

I disagree with the majority's resolution of Issue I. The court below ordered an evidentiary hearing in accordance with *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967). An experienced military judge heard the "new evidence" and made detailed findings of fact, including a finding that Lieutenant Colonel (LTC) Henderson's "memory . . . is limited to his impressions of what [the victim] told him, and his sensing of what she meant, rather than her actual responses." The court below, with independent factfinding power, reviewed the military judge's findings of fact and concluded that appellant had not met his burden of showing that LTC Henderson's testimony "would probably produce a substantially more favorable result." RCM 1210(f)(2)(C), Manual for Courts–Martial, United States (1995 ed.). On this record, I find no abuse of discretion. Accordingly, I dissent.

I also disagree with the majority's assertion that Issue II is moot. If Issue II has merit, appellant is entitled to dismissal of the charges, not just a new trial. On the merits of Issue II, I believe that appellant is not entitled to relief. There was no "intentional tactical delay" and no prejudice. *See United States v. Reed*, 41 MJ 449, 452 (1995).

I would affirm the decision of the court below in its entirety.

---

7. We express no opinion as to whether Article 43(a), UCMJ, 10 USC § 843(a), applies to a rape charge. *See United States v. Moore*, 32 MJ 170, 171 n. 1 (CMA 1991); *see, e.g., Ex Parte Beverly*, 497 So.2d 519, 525–29 (Ala.1986).